UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HEIDI JUNGEL,

           Plaintiff,

v.

ATLASSIAN CORPORATION and
ATLASSIAN US, INC.,
each a Delaware Corporation,

Defendants.

CASE NO.  26-cv-

HON. _____

_____

Raymond J. Carey (P33266)
Raymond J. Carey & Associates, PLLC
30500 Northwestern Highway, Suite 425
Farmington Hills, Michigan 48334
(248) 865-0001/ F: (248) 865-0002
rcarey@work-lawyers.com
*Attorneys for Plaintiff*

## **COMPLAINT AND JURY DEMAND**

Plaintiff Heidi Jungel (hereinafter "Plaintiff" or "Ms. Jungel"), by and through

her attorneys, RAYMOND J. CAREY & ASSOCATES, PLLC., complains against

Defendants, Atlassian Corporation and Atlassian US, Inc. (together "Defendant" or

"Atlassian"), as follows:

1.     Plaintiff Heidi Jungel brings this action against Defendant for:

discrimination on account of a disability, record of disability, and perceived

disability and failure to accommodate a disability in violation of the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. §§12101, *et seq*., and Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"), M.C.L.A. §§37.1101, *et seq*., and discrimination against her and interference with her protected rights in violation of the Family and Medical Leave Act("FMLA"), 29 U.S.C. §§2601, *et seq*., premised on the circumstances leading up to and including Defendant's termination of Plaintiff's employment relationship with it, effective May 19, 2025.

### PARTIES

2.     Plaintiff Heidi Jungel resides in the City of Vicksburg, County of Kalamazoo, State of Michigan.

3.     Each Defendant is a for profit corporation organized under the laws of the State of Delaware with corporate offices at 350 Brush Street, Floor 13, San Franciso, California.

4.     Plaintiff had been employed by Defendant as a Senior Accessibility Software Engineer, a position that was remote, from December 5, 2022, until May 12, 2025, when she was notified that her employment had been wrongfully terminated by Defendant, effective May 19, 2025.

## JURISDICTION AND VENUE

5.      The amount in controversy exceeds $75,000 exclusive of interest and costs.

6.      Plaintiff filed a Charge of Discrimination with the EEOC on November 19, 2025, asserting claims against Defendant for discrimination on account of a disability, record of disability, and perceived disability, failure to accommodate a disability, and retaliation in violation of the ADA and PWDCRA.

7.      Plaintiff's Charge of Discrimination was filed within the 300-day period after May 12, 2025, when she was notified about her employment termination, and May 19, 2025, the effective date of her wrongful employment termination by Defendant.

8.      The EEOC issued a Notice of Right to Sue to Plaintiff with respect to the above referenced Charge of Discrimination on April 28, 2026, and Plaintiff is filing this Complaint to include claims against Defendant for discrimination on account of a disability, record of disability, and perceived disability, failure to accommodate a disability, and retaliation in violation of the ADA within the requisite 90-day period after she received the Notice.

9.      This Court has subject matter jurisdiction over Plaintiff's claims under and pursuant to 28 USC § 1331 because these involve federal questions pertaining to violations of her civil rights protected by the ADA, *see* 28 U.S.C. 1343 (civil

rights); 42 U.S.C. § 12117 (violation of the ADA), and the FMLA, 29 U.S.C. § 2617 (FMLA).

10.    This Court has subject matter jurisdiction over Plaintiff's claims under and pursuant to 28 U.S.C. § 1332 because this is an action by Plaintiff who is a citizen of Michigan against each Defendant which is deemed to be a citizen of California and the amount in controversy exceeds $75,000 exclusive of interest and costs.

11.    This Court has personal jurisdiction over Plaintiff because she resides in Vicksburg in Kalamazoo County within the Western District of Michigan.

12.    This Court has personal jurisdiction over each Defendant because at all times relevant to Plaintiff's claims it engaged in regular and systematic business and other activities in Kalamazoo County, Michigan, within the Western District of Michigan, it employed Plaintiff in Kalamazoo County, Michigan, within the Western District of Michigan, and the acts and omissions attributed to Defendant that give rise to Plaintiff's claims occurred and adversely affected Plaintiff in Kalamazoo County, Michigan, within the Western District of Michigan.

13.    Venue is proper in this district court pursuant 28 U.S.C. §1391(b) and (c) because Plaintiff resides within the Western District of Michigan; Defendant engaged in regular and systematic business and other activities within the Western

District of Michigan; and the events that give rise to Plaintiff's claims occurred or had consequences on Plaintiff within the Western District of Michigan.

14. Venue also is convenient in this judicial district.

## STATEMENT OF FACTS

15. Ms. Jungel is a 52-year-old female who was born on October 28, 1973.

16. Ms. Jungel is afflicted with usher syndrome and concomitant bi-lateral hearing loss and blindness, which is an impairment that limits her major life activities, including seeing and hearing.

17. Atlassian is a proprietary software company that specializes in collaboration tools designed primarily for software development and project management.

18. Ms. Jungel has more than 20 years of effective software accessibility engineering experience and met the qualifications applicable to a Senior Accessibility Software Engineer position for which Defendant sought applicants between June and December, 2022.

19. Ms. Jungel was hired by Defendant on December 22, 2022, for these reasons as a Senior Accessibility Software Engineer on Atlassian's Central Accessibility Team, a position that was remote.

20. Atlassian has what it calls a distributed primarily remote work force and designates employee office locations for administrative and human resources purposes based on the home address where the employee works remotely.

21. Ms. Jungel worked remotely for Defendant beginning on December 5, 2022, and worked remotely from her residence in Vicksburg, Michigan, and was employed by Defendant in Vicksburg, Michigan, from September 1, 2023, until May 19, 2025, when her employment was wrongfully terminated by Defendant.

22. Atlassian had designated its Alexandia, Virginia, office as Ms. Jungel's office location for administrative and human resources purposes from December 22, 2022, through May 19, 2025.

23. Atlassian's Alexandia, Virginia, office had been the designated work location of more than fifty (50) of its distributed remote work force employees during the period between December 22, 2022, and May 19, 2025.

24. The members of the Atlassian's Central Accessibility Team from December 22, 2022, until May, 2024, included Rob Sinclair, Ms. Jungel's manager; Federico Knussel; Pawel Wodkowski; Kelly Ford; Becky Topps; Andy Lahart; Leona Zumbo; Matthew Brennan; and Maggie Nicolino and accessibility partner, Aidan Hartley Branwyn.

25. Ms. Jungel's primary job responsibility as a Senior Accessibility Software Engineer had been to improve the opportunity for people of all abilities,

including those with disabilities, to use Atlassian software products and to facilitate Atlassian's compliance with applicable legal and industry standards, which entailed: collaboration with Atlassian software designers and developers with respect to software accessibility integration in conformity with applicable legal and industry standards;  creation of software engineering knowledgebase articles about software accessibility coding practices; generating blog posts on the impacts of software accessibility coding on users with disabilities; development and implementation of guidelines, patterns, and common components for use by software engineers to improve software accessibility; and software accessibility problem solving.

26.   Despite her affliction with usher syndrome and concomitant bi-lateral hearing loss and blindness, Ms. Jungel was qualified for and able to perform the essential functions of her job as an Atlassian Senior Accessibility Software Engineer with or without work-related accommodations.

27.   As acknowledged by Mr. Sinclair and Ms. Jungel's peers, Ms. Jungel had performed the duties and responsibilities of her Senior Accessibility Software Engineer position in a satisfactory or better manner throughout her employment with Defendant.

28.    Ms. Jungel had not been subjected to discipline of any kind ostensibly due to misconduct of any kind throughout her employment with Defendant.

29.    Ms. Jungel had not been subjected to a negative performance evaluation, warnings, or discipline of any kind ostensibly due to poor job performance as a Senior Accessibility Software Engineer on Atlassian's Central Accessibility Team at any time during her employment with Defendant.

30.    Around May, 2024, Ms. Jungel and Mr. Knussel were reassigned without prior notice or explanation to the Atlassian Design System Accessibility Team.

31.    The Atlassian Design System Accessibility Team also included: Sudharsana Narasimhan, team manager who also was Ms. Jungel's supervisor; Sami Jaatinen, Mr. Narasimhan's supervisor; Gerard Cohen; Milo Fultz; Nate Scribano; and Xiaoming Wu; and accessibility partners, Aidan Hartley Branwyn until around September, 2024, and Mina Difuidi between December, 2024, and May,2025.

32.    As acknowledged by Ms. Jungel's peers, Ms. Jungel had continued to perform the duties and responsibilities of her Senior Accessibility Software Engineer position in a satisfactory or better manner after she had been reassigned to the Atlassian Design System Accessibility Team.

33.    B4ginning in July, 2024, Ms. Jungel realized that she had been receiving very little accessibility software engineering work and had instead been assigned software coding work.

34.     During his initial evaluation of Ms. Jungel's job performance in July, 2024, Mr. Narasimhan advised her that she had been relegated to a senior software engineer position and he had expected her to perform the duties and responsibilities of the role although she had subject matter expertise in software accessibility, she had not received prior notice of this change, she did not have senior software engineering experience, and no updated job description had been provided to her.

35.     Ms. Jungel routinely voiced concerns since July, 2024, to Mr. Narasimhan that: the unexpected changes to her duties and responsibilities had been inconsistent with her background and experience and the job description pertaining to her Senior Accessibility Software Engineer position for which she had been hired by Defendant and the duties and responsibilities of which she had successfully performed since her hire; the accessibility coding duties and responsibilities expected or her differed from the duties and responsibilities associated with her Senior Accessibility Software Engineer position;  the software that had been available for her use in the senior software engineering role had been inaccessible to her because of her blindness and bi-lateral hearing loss; and she had not been provided assistive technologies, availability of an accessibility partner to assist with matters otherwise inaccessible to her, adequate accessibility, technical, and other support, training, and other work-related accommodations needed for her to succeed in the software engineering role.

36.    Ms. Jungel had requested since July, 2024, that Mr. Narasimhan provide job related accommodations for her blindness and bi-lateral hearing loss, including use of assistive technologies, availability of an accessibility partner to assist with matters otherwise inaccessible to her, extra time to perform tasks associated with her job like review of pull requests, coding, pushing code into the mono repo, creating new pages in confluence, creating Loom videos, creating and updating Jira tickets, and updating Apex goals, and extra time to attend staff meetings, for office hours, and work in a disturbed rotation.

37.    Ms. Jungel reiterated a request for these types of job-related accommodations to Mr. Narasimhan in early November, 2024.

38.    Mr. Narasimhan disregarded Ms. Jungel's accommodation requests and obvious need for work related accommodations, he did not engage her in an interactive process of any kind to address her accommodation requests and/or to determine whether and what reasonable accommodations were needed, and he did not grant or implement any reasonable work-related accommodations during the period since July, 2024.

39.    Instead, Mr. Narasimhan directed Ms. Jungel to have her health care provider confirm her need for job-related accommodations in writing after Ms. Jungel reiterated her request for job-related accommodations to Mr. Narasimhan in early November, 2024.

40. Ms. Jungel's health care provider, Evan Fitzgerald, M.D., confirmed in writing on November 7, 2024, that Ms. Jungel needed job-related accommodations because of her blindness and bi-lateral hearing loss.

41. Ms. Jungel provided Mr. Narasimhan with Dr. Fitzgerald's written confirmation of her need for job-related accommodations because of her blindness and bi-lateral hearing loss between November 7 and 19, 2024, in compliance with Mr. Narasimhan's direction.

42. Mr. Narasimhan disregarded Ms. Jungel's accessibility and other accommodation requests and obvious need for work related accommodations, he did not engage her in an interactive process of any kind to address her accommodation requests and/or to determine whether and what reasonable accommodations were needed by her, and he did not grant or implement any reasonable accommodations for her during the period since November 7, 2024.

43. As acknowledged by Ms. Jungel's peers, Ms. Jungel had continued to perform the duties and responsibilities of the senior software engineering role in a satisfactory or better manner between July, 2024, and January, 2025, after she had been reassigned to the Atlassian Design System Accessibility Team, despite Mr. Narasimhan's disregard of Ms. Jungel's accommodation requests and obvious need for work related accommodations.

44.    In January, 2025, Mr. Narasimhan discriminated against Ms. Jugel because of her disabilities, record of disability, and perceived disabilities, perpetuated his failure to engage her in an interactive process of any kind to address her work-related accommodation requests and/or to determine whether and what reasonable work-related accommodations were needed by her, continued his failure to provide Ms. Jungel with her obviously needed work related accommodations, and retaliated against her because of her accommodation requests when he gave her a performance review evincing that she had met most of her 2024 job expectations, but also subjected her to a vague Performance Improvement Plan ("PIP") with respect to job duties for which she should have received, but did not receive, the job related  accommodations that she had requested since July, 2024, and/or which obviously had been needed by her.

45.    Mr. Narasimhan did not abide by Atlassian performance evaluation, PIP, disciplinary, and other applicable policies and he treated Ms. Jungel differently that similarly situated Atlassian employees with similar job performance when he issued the performance evaluation and vague PIP to Ms. Jungel in January, 2025.

46.    The PIP issued by Mr. Narasimhan to Ms. Jungel also was subjective in nature and did not include defined and measurable goals and objectives contrary to Atlassian performance evaluation, PIP, disciplinary, and other applicable policies.

47.    On or about February 3, 2025, Ms. Jungel complained to Atlassian human resources representative, Christine Donayre, that Mr. Narasimhan had ignored her accommodation requests and obvious need for work related accommodations due to her blindness and bi-lateral hearing loss, Mr. Narasimhan had discriminated against her because of her disabilities, and he had retaliated against her because of her accommodation requests when he gave her the January, 2025 performance evaluation and subjected her to the vague PIP with respect to job duties for which she should have received, but did not receive, the job related  accommodations that she had requested and/or which obviously had been needed by her.

48.    Ms. Donayre did not engage Ms. Jungel in an interactive process of any kind to address her accommodation requests and/or to determine whether and what reasonable accommodations were needed, she did not grant or implement any reasonable accommodations for her blindness and bi-lateral hearing loss, and she did not have Mr. Narasimhan modify the January, 2025 performance evaluation or rescind the PIP that he had wrongfully issued to Ms. Jungel.

49.    Instead, Ms. Donayre notified Ms. Jungel that Mr. Narasimhan had incorrectly advised her about how to request work related accommodations and directed Ms. Jungel to forward her work-related accommodation requests in writing

with supporting documentation to Atlassian's third party administrator, the Larkin Company ("Larkin").

50.    Ms. Jungel conferred with Larkin on February 6, 2025, about her need for work related accommodations and she submitted a detailed accommodation request with supporting documentation to Larkin on February 17, 2025, in compliance with Ms. Donayre's direction, which included: use of assistive technologies, availability of an accessibility partner to assist with matters otherwise inaccessible to her, extra time to perform tasks associated with her job like review of pull requests, coding, pushing code into the mono repo, creating new pages in confluence, creating Loom videos, creating and updating Jira tickets, and updating Apex goals, and extra time to attend staff meetings, for office hours, and work in a disturbed rotation.

51.    Larkin approved Ms. Jungel's work-related accommodation requests on behalf of Atlassian on February 28, 2025.

52.    The job-related accommodations approved by Larkin on behalf of Atlassian included: use of assistive technologies, availability of an accessibility partner to assist with matters otherwise inaccessible to her, extra time to perform tasks associated with her job like review of pull requests, coding, pushing code into the mono repo, creating new pages in confluence, creating Loom videos, creating

and updating Jira tickets, and updating Apex goals, and extra time to attend staff meetings, for office hours, and work in a disturbed rotation.

53.    Ms. Jungel requested and was granted FMLA leave during the period between mid- February and mid- March, 2025, for a heart condition caused by job related stress attributable to the discrimination based on her disabilities, record of disability, and perceived disability to which she had been subjected, the refusals of Defendant's representatives to make reasonable work-related accommodations for her disabilities, and the retaliation she had experienced after she had requested work related accommodations.

54.    Ms. Jungel returned to work for Atlassian from her approved FMLA leave in mid-March, 2025.

55.    The job-related accommodations approved by Larkin on behalf of Atlassian consisted of those which confirmed that Mr. Narasimhan had discriminated against Ms. Jugel because of her disabilities, record of disability, and perceived disability, Defendant's representatives had failed to make reasonable work-related accommodations for her disabilities, and Mr. Narasimhan had retaliated against her because of her accommodation requests in January, 2025, when he gave her a performance review evincing that she had met most of her job expectations and also had subjected her to the PIP.

56.    Despite this, neither Mr. Narasimhan, Ms. Donayre, nor any other Atlassian human resources or management representative rescinded or modified the January, 2025 performance review and PIP.

57.    Despite this, neither Mr. Narasimhan, Ms. Donayre, nor any other Atlassian human resources or management representative engaged Ms. Jungel in an interactive process of any kind since February 3, 2025, to address her accommodation requests and/or to determine whether and what reasonable work-related accommodations were needed, and they did not implement all of the work-related accommodations that Larkin had approved on behalf of Atlassian on February 28, 2025.

58.    Instead, although Ms. Jungel had not worked between mid-February and mid-March, 2025, she was subjected to another vague and subjective PIP upon her return to work for Atlassian from approved FMLA leave in mid-March, 2025, by Sami Jaatinen, Mr. Narasimhan's supervisor.

59.    Messrs. Narasimhan and Jaatinen did not abide by Atlassian performance evaluation, PIP, disciplinary, and other applicable policies and they treated Ms. Jungel differently than similarly situated Atlassian employees with similar performance evaluations when she was the second vague PIP in March, 2025.

60.     The second PIP issued to Ms. Jungel also did not include defined and measurable goals and objectives contrary to Atlassian performance evaluation, PIP, disciplinary, and other applicable policies.

61.     Messrs. Narasimhan and Jaatinen, Ms. Donayre, and other Atlassian human resources or management representatives discriminated against Ms. Jugel because of her disabilities, record of disability, and perceived disability, Defendant's representatives unlawfully failed to make reasonable work-related accommodations for her disabilities, and Defendant's representatives retaliated against her because of her accommodation requests and need for FMLA leave when they subjected her to another PIP in March, 2025, and did not rescind or modify the January, 2025 performance review and other PIP.

62.     Ms. Jungel made additional requests for assistive technologies, availability of an accessibility partner to assist with matters otherwise inaccessible to her, adequate accessibility, technical, and other support, training, and other work-related accommodations for her blindness and bi-lateral hearing loss between mid-March and May 12, 2025, that conformed with those which had been previously approved by Larkin on behalf of Atlassian and were necessary for her to succeed as a senior software engineer and achieve the vague and subjective goals of the second PIP.

63.    Despite this, neither Mr. Narasimhan, Ms. Donayre, nor any other Atlassian human resources or management representative engaged Ms. Jungel in an interactive process of any kind to address her accommodation requests and/or to determine whether and what reasonable accommodations were needed during the period between mid-March and May 12, 2025, and they did not grant or implement any reasonable accommodations for her blindness and bi-lateral hearing loss during the period between mid-March and May 12, 2025.

64.    As acknowledged by Ms. Jungel's peers, Ms. Jungel had continued to perform the duties and responsibilities of the senior software engineering role in a satisfactory or better manner during the period between mid-March and May 12, 2025, although defendant's representatives had ignored her accommodation requests and obvious need for work related accommodations for her blindness and bi-lateral hearing loss.

65.    Although as acknowledged by Ms. Jungel's peers, Ms. Jungel had continued to perform the duties and responsibilities of the senior software engineering role in a satisfactory or better manner despite Defendant's failure to accommodate her blindness and bi-lateral hearing loss during the period between mid-March and May 12, 2025, and she had achieved at least those PIP goals and objectives that had been adequately defined, measurable, and achievable despite Defendant's failure to accommodate her blindness and bi-lateral hearing loss during

the period between mid-March and May 12, 2025,  Ms. Jungel was notified on May 12, 2025, that her employment had been terminated by Defendant, effective May 19, 2025.

66.    Defendant's representatives terminated Ms. Jungel's employment, effective May 19, 2025, because of her disabilities, record of disability, and perceived disability, Defendant's representatives had refused to make reasonable work-related accommodations for her disabilities, and in retaliation for her accommodation requests and need for FMLA leave.

67.    Defendant's representatives did not abide by Atlassian performance evaluation, PIP, disciplinary, and other applicable policies and they treated Ms. Jungel differently that similarly situated non-disabled Atlassian employees and Atlassian employees who had not taken FMLA leave with similar or worse evaluations of their job performance when they issued the PIPs to her in January and March, 2025, failed or refused to modify or rescind the January, 2025 evaluation and the PIPs, and terminated her employment, effective May 19, 2025.

68.    Defendant's articulated reasons for subjecting Ms. Jungel to the PIPs, failures or refusals to modify or rescind the January, 2025 evaluation and the PIPs, and termination of her employment are false, otherwise did not justify these adverse employment actions, and are pretexts for discrimination against her because of her disabilities, record of disability, and perceived disability, the unlawful refusals of

Defendant's representatives to make reasonable work-related accommodations for her disabilities, and retaliation against her for her accommodation requests and need for FMLA leave.

69.    Defendant's representatives involved in the decisions to subject Ms. Jungel to the PIPs, not modify or rescind the January, 2025 evaluation and the PIPs, and terminate her employment treated her differently than similarly situated non-disabled Atlassian employees and Atlassian employees who had not taken FMLA leave with similar or worse evaluations of their job performance.

70.    Defendant's representatives tendered a proposed separation agreement to Ms. Jungel on May 12, 2025, which would have required her to release her claims for woefully inadequate consideration, in recognition that the terms and conditions of Ms. Jungel's former employment and her employment termination evinced discrimination against her because of her disabilities, record of disability, and perceived disability, unlawful refusal to make reasonable work-related accommodations for her disabilities, and retaliation against her for her accommodation requests and need for FMLA leave.

## COUNT I
### Violation of the Americans with Disabilities Act

71.    Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter reiterated paragraph by paragraph.

### Disability Discrimination

72.    At all relevant times, Plaintiff was an employee and Defendant was an employer within the meaning of these terms in the ADA, 42 U.S.C. §§ 12001, *et seq*. *See* 42 U.S.C. §12111(2), (4) and (5)

73.    The ADA makes it unlawful for an employer and its agents and representatives to discriminate against a qualified individual because the individual has a disability, a record of a disability, or because the employer regards the individual as disabled.

74.    At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meanings of applicable terms in the ADA because she is afflicted with usher syndrome and concomitant bi-lateral hearing loss and blindness and had been qualified for and able to perform the essential functions of her jobs as a Senior Accessibility Software Engineer and senior software engineer with or without accommodation.

75.    At all times relevant to this action, Plaintiff was a qualified individual with a disability, had a record of such a disability, and/or was regarded by Defendant as having such a disability within the meaning of the ADA because she is afflicted with usher syndrome and concomitant bi-lateral hearing loss and blindness that substantially limited Plaintiff's ability to care for herself and work, but which was unrelated to her qualifications for and her ability to perform the

essential functions of her jobs as a Senior Accessibility Software Engineer and senior software engineer with or without accommodation.

76.    Notwithstanding said duties as set forth above, Defendant discriminated against Plaintiff because of her disability, it regarded Plaintiff as disabled, and/or Plaintiff had a history of a disability in violation of the ADA when its representatives:

A.    did not engage Plaintiff in an interactive process with respect to her blindness and bi-lateral hearing loss and her need for work-related accommodations;

B.    did not grant Plaintiff's requests for reasonable work-related accommodations for her blindness and bi-lateral hearing loss;

C.    subjected her to the January, 2025 performance review and PIP and the March, 2025 PIP;

D.    did not rescind or modify the January, 2025 performance review and PIP and the March, 2025 PIP; and

E.    terminated her employment, effective May 19, 2025.

77.    Defendant's discriminatory treatment of Plaintiff was intentional and willful and was committed with malice or with reckless indifference to Plaintiff's rights.

78.    As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has sustained damages, including, but not limited to: loss of past, present and future annual salary, bonuses, incentive compensation, and earning capacity; lost value of retirement, health care, 401(k), and other benefits; mental and emotional distress, anguish, and anxiety, humiliation and embarrassment; loss of the enjoyment of the ordinary pleasures of everyday life; and loss of the ability to pursue gainful employment of choice.

**Failure to Accommodate**

79.    The ADA further requires employers to provide reasonable work-related accommodations for qualified individuals with disabilities unless the accommodation will impose an undue hardship and to engage in a meaningful interactive process with employees with regard to requests for reasonable accommodations.

80.    Plaintiff made oral and written requests for work related accommodations for her blindness and bi-lateral hearing loss after her need for these became known to her on multiple occasions beginning in July, 2024.

81.    At all times relevant, Defendant had a duty under the ADA to accommodate Plaintiff for purposes of employment unless the accommodation would have imposed an undue hardship.

82.    At all times relevant, Defendant could have provided work-related accommodations for Plaintiff's blindness and bi-lateral hearing loss without suffering an undue hardship.

83.    Defendant breached their duty under the ADA to accommodate Plaintiff's disabilities when their representatives:

A.    did not engage Plaintiff in an interactive process with respect to her blindness and bi-lateral hearing loss and her need for work-related accommodations;

B.    did not grant Plaintiff's requests for reasonable work-related accommodations for her blindness and bi-lateral hearing loss;

C.    subjected her to the January, 2025 performance review and PIP and the March, 2025 PIP;

D.    did not rescind or modify the January, 2025 performance review and PIP and the March, 2025 PIP; and

E.    terminated her employment, effective May 19, 2025.

84.    As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has sustained damages, including, but not limited to: loss of past, present and future annual salary, bonuses, incentive compensation, and earning capacity; lost value of retirement, health care, 401(k), and other benefits; mental and emotional distress, anguish, and anxiety, humiliation and embarrassment; loss of the

enjoyment of the ordinary pleasures of everyday life; and loss of the ability to pursue gainful employment of choice.

## Retaliation

85.    At all times relevant hereto, Defendant and their representatives had a duty under the ADA not to retaliate against Plaintiff with respect to her employment, compensation, terms, conditions or privileges of his employment, or to limit, segregate, or classify Plaintiff for employment in any way which deprived or tended to deprive Plaintiff of employment opportunities or otherwise adversely affect the employment status of Plaintiff in retaliation for the work-related accommodations for her disabilities that she had requested.

86.    Notwithstanding said duties as set forth above, Defendant retaliated against Plaintiff in violation of the ADA for requesting work-related accommodations for her disabilities when its representatives wrongfully:

A.    did not engage Plaintiff in an interactive process with respect to her blindness and bi-lateral hearing loss and her need for work-related accommodations;

B.    did not grant Plaintiff's requests for reasonable work-related accommodations for her blindness and bi-lateral hearing loss;

C.    subjected her to the January, 2025 performance review and PIP and the March, 2025 PIP;

D.    did not rescind or modify the January, 2025 performance review and

PIP and the March, 2025 PIP; and

E.    terminated her employment, effective May 19, 2025.

87.    Defendant's retaliatory treatment of Plaintiff was intentional and willful and was committed with malice or with reckless indifference to Plaintiff's rights.

88.    As a direct and proximate result of Defendant's violations of the ADA, Plaintiff has sustained damages, including, but not limited to: loss of past, present and future annual salary, bonuses, incentive compensation, and earning capacity; lost value of retirement, health care, 401(k), and other benefits; mental and emotional distress, anguish, and anxiety, humiliation and embarrassment; loss of the enjoyment of the ordinary pleasures of everyday life; and loss of the ability to pursue gainful employment of choice.

**COUNT II**
**Violation of Michigan's Persons with Disabilities Civil Rights Act**
**("PWDCRA")**

89.    Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter reiterated paragraph by paragraph.

**Disability Discrimination**

90.    At all relevant times, Plaintiff was an employee and Defendant was an employer within the meaning of these terms in Michigan's PWDCRA, M.C.L.A. §37.1101, *et seq.*

91.    The PWDCRA makes it unlawful for an employer and its agents and representatives to discriminate against a qualified individual because the individual has a disability, a record of a disability, or because the employer regards the individual as disabled.

92.    At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meanings of applicable terms in the PWDCRA because she is afflicted with usher syndrome and concomitant bi-lateral hearing loss and blindness and had been qualified for and able to perform the essential functions of her jobs as a Senior Accessibility Software Engineer and senior software engineer with or without accommodation.

93.    At all times relevant to this action, Plaintiff was a qualified individual with a disability, had a record of such a disability, and/or was regarded by Defendant as having such a disability within the meaning of the PWDCRA because she is afflicted with afflicted with usher syndrome and concomitant bi-lateral hearing loss and blindness that substantially limited Plaintiff's ability to care for herself and work, but which was unrelated to her qualifications for and her ability

to perform the essential functions of her jobs as a Senior Accessibility Software Engineer and senior software engineer with or without accommodation.

94.    Notwithstanding said duties as set forth above, Defendant discriminated against Plaintiff because of her disability, it regarded Plaintiff as disabled, and/or Plaintiff had a history of a disability in violation of the PWDCRA when its representatives:

A.    did not engage Plaintiff in an interactive process with respect to her blindness and bi-lateral hearing loss and her need for work-related accommodations;

B.    did not grant Plaintiff's requests for reasonable work-related accommodations for her blindness and bi-lateral hearing loss;

C.    subjected her to the January, 2025 performance review and PIP and the March, 2025 PIP;

D.    did not rescind or modify the January, 2025 performance review and PIP and the March, 2025 PIP; and

E.    terminated her employment, effective May 19, 2025.

95.    Defendant's discriminatory treatment of Plaintiff was intentional and willful and was committed with malice or with reckless indifference to Plaintiff's rights.

96.    As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has sustained damages, including, but not limited to: loss of past, present and future annual salary, bonuses, incentive compensation, and earning capacity; lost value of retirement, health care, 401(k), and other benefits; mental and emotional distress, anguish, and anxiety, humiliation and embarrassment; loss of the enjoyment of the ordinary pleasures of everyday life; and loss of the ability to pursue gainful employment of choice.

### Failure to Accommodate

97.    The PWDCRA further requires employers to provide reasonable work- related accommodations for qualified individuals with disabilities unless the accommodation will impose an undue hardship and to engage in a meaningful interactive process with employees with regard to requests for reasonable accommodations.

98.    Plaintiff made oral and written requests for work related accommodations for her blindness and bi-lateral hearing loss within 182 days after her need for these became known to her on multiple occasions beginning in July, 2024.

99.    At all times relevant, Defendant had a duty under the PWDCRA to accommodate Plaintiff for purposes of employment unless the accommodation would have imposed an undue hardship.

100. At all times relevant, Defendant could have provided work-related accommodations for Plaintiff's blindness and bi-lateral hearing loss without suffering an undue hardship.

101. Defendant breached their duty under the PWDCRA to accommodate Plaintiff's disabilities when their representatives:

A.    did not engage Plaintiff in an interactive process with respect to her blindness and bi-lateral hearing loss and her need for work-related accommodations;

B.    did not grant Plaintiff's requests for reasonable work-related accommodations for her blindness and bi-lateral hearing loss;

C.    subjected her to the January, 2025 performance review and PIP and the March, 2025 PIP;

D.    did not rescind or modify the January, 2025 performance review and PIP and the March, 2025 PIP; and

E.    terminated her employment, effective May 19, 2025.

102. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has sustained damages, including, but not limited to: loss of past, present and future annual salary, bonuses, incentive compensation, and earning capacity; lost value of retirement, health care, 401(k), and other benefits; mental and emotional distress, anguish, and anxiety, humiliation and embarrassment; loss of the

enjoyment of the ordinary pleasures of everyday life; and loss of the ability to pursue gainful employment of choice.

### Retaliation

103.    At all times relevant hereto, Defendant and their representatives had a duty under the PWDCRA not to retaliate against Plaintiff with respect to her employment, compensation, terms, conditions or privileges of his employment, or to limit, segregate, or classify Plaintiff for employment in any way which deprived or tended to deprive Plaintiff of employment opportunities or otherwise adversely affect the employment status of Plaintiff in retaliation for the work-related accommodations for her disabilities that she had requested.

104.    Notwithstanding said duties as set forth above, Defendant retaliated against Plaintiff in violation of the PWDCRA for requesting work related accommodations for her disabilities when its representatives wrongfully:

A.    did not engage Plaintiff in an interactive process with respect to her blindness and bi-lateral hearing loss and her need for work-related accommodations;

B.    did not grant Plaintiff's requests for reasonable work-related accommodations for her blindness and bi-lateral hearing loss;

C.    subjected her to the January, 2025 performance review and PIP and the March, 2025 PIP;

D.    did not rescind or modify the January, 2025 performance review and PIP and the March, 2025 PIP; and

E.    terminated her employment, effective May 19, 2025.

105. Defendant's retaliatory treatment of Plaintiff was intentional and willful and was committed with malice or with reckless indifference to Plaintiff's rights.

106. As a direct and proximate result of Defendant's violations of the PWDCRA, Plaintiff has sustained damages, including, but not limited to: loss of past, present and future annual salary, bonuses, incentive compensation, and earning capacity; lost value of retirement, health care, 401(k), and other benefits; mental and emotional distress, anguish, and anxiety, humiliation and embarrassment; loss of the enjoyment of the ordinary pleasures of everyday life; and loss of the ability to pursue gainful employment of choice.

## COUNT III
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT ("FMLA")

107. Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter reiterated paragraph by paragraph.

108. At all times relevant, Plaintiff was an employee subject to the protections of the FMLA, Defendant and each of their representatives was an employer obligated to comply with the FMLA because Defendant routinely employed 50 or more employees at what had been designated as Plaintiff's office

location for administrative and human resources purposes, Plaintiff had been employed by Defendant for more than 12 months, and Plaintiff had worked more than 1250 hours for Defendant during the 12 month period preceding the date when Defendant had notice of her need for FMLA leave and when her FMLA leave had commenced.

109.    The FMLA gives employees the right to take up to 12 weeks of continuous or intermittent leave during a 12-month period for a qualifying condition or reason.

110.    The FMLA provides that an employee taking FMLA leave has an accompanying right to return to the same or an equivalent position at the conclusion of the leave period.

111.    At all times relevant, Plaintiff had been an employee entitled to up to 12 weeks of continuous or intermittent FMLA leave because she had become disabled due to the heart condition caused by job related stress attributable to the discrimination based on her disabilities, record of disability, and perceived disability to which she had been subjected, the refusals of Defendant's representatives to make reasonable work-related accommodations for her disabilities, and the retaliation she had experienced after she had requested work related accommodations.

112.    Under the FMLA, Defendant had an obligation to advise Plaintiff that she was entitled to up to 12 weeks of continuous or intermittent FMLA leave due

to the heart condition caused by job related stress attributable to the discrimination based on her disabilities, record of disability, and perceived disability to which she had been subjected, the refusals of Defendant's representatives to make reasonable work-related accommodations for her disabilities, and the retaliation she had experienced after she had requested work related accommodations.

113.    Under the FMLA, Defendant were prohibited from interfering with Plaintiff's exercise of FMLA rights, restraining Plaintiff from exercising FMLA rights, and denying Plaintiff's exercise of or attempt to exercise FMLA rights.

114.    Under the FMLA, Defendant was prohibited from discriminating and retaliating against Plaintiff because she exercised or attempted to exercise FMLA rights.

115.    Notwithstanding Defendant's duties under the FMLA as set forth above, Defendants willfully interfered with Plaintiff's exercise of FMLA rights, restrained Plaintiff from exercising FMLA rights, and denied Plaintiff's exercise of or attempt to exercise FMLA rights, discriminated and retaliated against Plaintiff in violation of the FMLA, and otherwise violated the FMLA when they:

A.    subjected her to the March, 2025 PIP;

B.    did not rescind or modify the January, 2025 performance review and PIP and the March, 2025 PIP;

C.      did not grant Plaintiff's requests for reasonable work-related accommodations for her blindness and bi-lateral hearing loss so that she could achieve the goals of the March, 2025 PIP; and

D.      terminated her employment, effective May 19, 2025.

116.    As a direct and proximate result of Defendant's violations of the FMLA, Plaintiff has sustained damages, including, but not limited to: loss of past, present and future annual salary, bonuses, incentive compensation, and earning capacity; lost value of retirement, health care, 401(k), and other benefits; mental and emotional distress, anguish, and anxiety, humiliation and embarrassment; loss of the enjoyment of the ordinary pleasures of everyday life; and loss of the ability to pursue gainful employment of choice.

## RELIEF REQUESTED

**Wherefore,** Plaintiff requests the following relief against Defendant:

A.      Declare that the acts and practices outlined above were unlawful and violated the ADA, FMLA, and PWDCRA;

B.      Enjoin and permanently restrain these practices;

C.      Direct Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

D.      Enter a Judgment or Order reinstating Plaintiff to her former position or a comparable one with full seniority rights and restoration of compensation and benefits retroactive to May 19, 2025;

E.      Enter a Judgment or Order restoring Plaintiff's benefits retroactive to May 19, 2025, and requiring Defendant to fund these as though Plaintiff's employment had not been terminated

F.      Award Plaintiff damages for all lost past, present and future annual salary, bonuses, incentive compensation, and other earnings and earning capacity; the value of all lost health, retirement, and other benefits; and the value of other losses and expenses incurred by her due to her employment termination;

G.      Award Plaintiff liquidated damages for violations of the FMLA;

H.      Award Plaintiff punitive, compensatory, and/or exemplary damages for violations of her protected rights and for mental anguish, emotional distress, humiliation and injury to her reputation;

I.      Award Plaintiff pre- and post-judgment interest and reasonable attorney fees and costs, including expert witness fees; and

J.      Grant such other legal or equitable relief as this Court deems appropriate.

Respectfully submitted,

**Raymond J. Carey & Associates, PLLC**

BY:    */s/ Raymond J. Carey_____*
          Raymond J. Carey (P33266)
          Attorneys for Plaintiff
          30500 Northwestern Hwy. Suite 425
          Farmington Hills, MI 48334
          (248) 865-0001
          rcarey@work-lawyers.com

Dated: July 15, 2026

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HEIDI JUNGEL,

          Plaintiff,                 CASE NO.  26-cv-

v.                           HON. _____

ATLASSIAN CORPORATION and
ATLASSIAN US, INC.,
each a Delaware Corporation,

          Defendants.

_____

Raymond J. Carey (P33266)
Raymond J. Carey & Associates, PLLC
30500 Northwestern Highway, Suite 425
Farmington Hills, Michigan 48334
(248) 865-0001/ F: (248) 865-0002
rcarey@work-lawyers.com
*Attorneys for Plaintiff*
_____

## DEMAND FOR TRIAL BY JURY

Plaintiff Heidi Jungel, by her attorneys, Raymond J. Carey & Associates,

PLLC, demands a trial by Jury.

                         Respectfully submitted,

                         **Raymond J. Carey & Associates, PLLC**
                         BY:   */s/ Raymond J. Carey*
                             Raymond J. Carey (P33266)
                             Attorneys for Plaintiff
                             30500 Northwestern Hwy. Suite 425
                             Farmington Hills, MI 48334

Dated: July 15, 2026            (248) 865-0001
                             rcarey@work-lawyers.com